# United States Court of Appeals
## *for the*
# Seventh Circuit

---

No. 07-1624

---

JERRY N. JONES, MARY F. JONES and ARLINE WINERMAN,
Plaintiffs-Appellants,

v.

HARRIS ASSOCIATES L.P.,
Defendant-Appellee.

---

On Remand from the United States Supreme Court After an Appeal from the
United States District Court for the Northern District of Illinois

---

**Defendant-Appellee Harris Associates L.P.'s
Answer to Petition for Rehearing *En Banc***

---

JOHN D. DONOVAN, JR.
ROBERT A. SKINNER
DOUGLAS H. HALLWARD-DRIEMEIER
AMY D. ROY
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199
Telephone: (617) 951-7000
Facsimile: (617) 951-7050

*Counsel for Defendant-Appellee Harris Associates L.P.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, Appellee Harris Associates L.P. ("Harris") states that it is a Delaware limited partnership managed by its general partner, Harris Associates, Inc., which owns .33% of the limited partnership interests. Harris Associates, Inc. is a wholly-owned indirect subsidiary of Natixis Global Asset Management, L.P. ("Natixis U.S."). Natixis U.S. owns 99.67% of Harris' limited partnership interests and, through its wholly-owned subsidiary, Natixis Global Asset Management Holdings, LLC, all of the outstanding shares of Harris Associates, Inc. There is no publicly held corporation that holds more than 10% of Harris' stock.

Natixis U.S. is part of Natixis Global Asset Management, an international asset management group based in Paris, France, that is in turn principally owned by Natixis, a French investment banking and financial services firm. Natixis is principally owned by BPCE, France's second largest banking group. BPCE is owned by banks comprising two autonomous and complementary retail banking networks consisting of the Caisse d'Epargne regional savings banks and the Banque Populaire regional cooperative banks. Natixis is a public company whose shares trade on the Euronext Paris exchange.

Pursuant to Cir. R. 26.1, Harris further states that the following law firms have appeared or are expected to appear on its behalf:

ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts  02199
Telephone:  (617) 951-7000
Facsimile:  (617) 951-7050

DRINKER BIDDLE GARDNER
   CARTON LLP
191 North Wacker Drive
Suite 3700
Chicago, IL  60606-1698
Telephone:  (312) 569-1384
Facsimile:  (312) 569-3384

MoloLamken LLP
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
Telephone: 202.556.2000
Facsimile: 202.556.2001

Baker Botts L.L.P.
910 Louisiana Street
Houston, TX 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-7855

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT .......................................................................... i

TABLE OF CONTENTS ............................................................................................ iii

TABLE OF AUTHORITIES .......................................................................................... iv

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .......................................................................................................... 2

I.    The Remand Panel Properly Considered Comparable Mutual Fund Fees Among Other Relevant Factors to Conclude The Fees Were Not Beyond What Could Be Bargained at Arm's Length ................................................................................................. 3

II.   The Panel Did Not "Categorically Dismiss" Evidence of Fees Charged to Institutional Clients in Conflict with Jones ......................................................................... 7

III.  The Panel Did Not "Ignore" the Supreme Court's Instructions Regarding Board Process in Considering the Plaintiffs' Evidence of Supposed "Structural Defects" ........................... 11

CONCLUSION ....................................................................................................... 14

CERTIFICATE OF COMPLIANCE ................................................................................ 17

CERTIFICATE OF SERVICE ..................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*Easley v. Reuss,*
  532 F.3d 592 (7th Cir. 2008) (per curiam)............................................................2, 7, 11

*Gartenberg v. Merrill Lynch Asset Management, Inc.*
  694 F.2d 923 (2d Cir. 1982) ....................................................................................3

*HM Holdings, Inc. v. Rankin,*
  72 F.3d 562 (7th Cir. 1995).....................................................................................15

*Jones v. Harris Associates L.P.,*
  559 U.S. 335 (2010) .......................................................................................... passim

*Jones v. Harris Associates L.P.,*
  527 F.3d 627 (7th Cir. 2008) ..................................................................................8

*Jones v. Harris Assocsiates L.P.,*
  No. 04 C 8305, 2007 WL 627640 (N.D. Ill. Feb. 27, 2007)................................ passim

*Roberts v. Sears, Roebuck & Co.,*
  723 F.2d 1324 (7th Cir. 1983) ................................................................................15

*Vidimos, Inc. v. Wysong Laser Co., Inc.,*
  179 F.3d 1063 (7th Cir. 1999) ................................................................................13

## STATUTES

Investment Company Act of 1940 (the "ICA") .......................................................... passim

## OTHER AUTHORITIES

FED. R. APP. P. 35...................................................................................................2, 15

## PRELIMINARY STATEMENT

In *Jones v. Harris Associates L.P.*, 559 U.S. 335 (2010) ("*Jones*"), the Supreme Court held that to be liable as a fiduciary "with respect to the receipt of compensation" under Section 36(b) of the Investment Company act of 1940 (the "ICA"), an adviser "must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." 559 U.S. at 344 (citing *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.* 694 F.2d 923, 928 (2d Cir. 1982)). That was the very standard the District Court invoked when it granted summary judgment to Harris Associates ("Harris") in 2007. *Jones v. Harris Assocs. L.P.*, No. 04 C 8305, 2007 WL 627640 at *7–9 (N.D. Ill. Feb. 27, 2007). On remand from the Supreme Court, the panel forthrightly acknowledged that the Supreme Court "disagreed with our legal standard" and proceeded to faithfully apply the test *Jones* announced to the factual record developed in the District Court. *See* Order of Aug. 6, 2015 (Dkt. 51) ("Remand Order") at 1. The remand panel's holding was correct and presents no issue of law that satisfies the high standard for rehearing by the *en banc* court.

*En banc* rehearing is reserved for cases posing "intra-circuit" conflicts and questions of "exceptional importance," such as a "conflict" with a decision of the Supreme Court. But although the plaintiffs clothe their Petition for *en banc* review as raising ostensible "conflicts" with the Supreme Court's decision in *Jones,* the conflicts they conjure up are a chimera. They contend the remand panel relied "too heavily" on evidence of one comparison, "dismiss[ed]" evidence of another contrast, and "ignored" evidence of "procedural" flaws. *See* Pet. for Reh'g *En Banc* (Dkt. 55)

1

("Petition") at 6, 11–12.  In short, their real disputes are with how the remand panel dealt with the evidentiary record when applying the *Jones* standard to that record. But those are not issues that "affect the integrity of the circuit's case law (intra-circuit conflicts) and the development of the law (questions of exceptional importance)," which are the only legitimate subjects for *en banc* rehearing.  *Easley v. Reuss*, 532 F.3d 592, 594 (7th Cir. 2008) (per curiam).  Simply put, the Petition's claimed "errors in the reading of the factual record" do not warrant the invocation of the *en banc* process that is "reserved for the truly exceptional cases."  *Id.*

## ARGUMENT

"[*E*]*n banc* hearing or rehearing is not favored and ordinarily will not be ordered unless: (1) *en banc* consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance."  FED. R. APP. P. 35(a).  In applying Rule 35, this Court sharply distinguishes *en banc* and panel rehearings:

> Panel rehearings are designed as a mechanism for the panel to correct its own errors in the reading of the factual record or the law, rehearings *en banc* are designed to address issues that affect the integrity of the circuit's case law (intra-circuit conflicts) and the development of the law (questions of exceptional importance).

*Easley*, 532 F.3d at 594, *cited in* Seventh Circuit Practitioner's Handbook (2014 ed.) at 160.

Here, the plaintiffs' Petition for *en banc* rehearing claims that the panel's opinion on remand "conflicts" with the Supreme Court's opinion in the case.  Pet. at 1.  But their quarrel is with the panel's application of the summary judgment record to the standard the Supreme Court announced (and the District Court originally

2

applied).  They do not begin to say how the panel's reading of the record poses either

an "intra-circuit conflict" or a "question of exceptional importance."

I.    **The Remand Panel Properly Considered Comparable Mutual Fund Fees Among Other Relevant Factors to Conclude The Fees Were Not Beyond What Could Be Bargained at Arm's Length**

The plaintiffs first assert that the remand panel "contradicted" the Supreme

Court's decision in *Jones* by relying too heavily on evidence comparing Harris'

advisory fees to fees paid by similar mutual funds.  Pet. at 7–9.  According to the

Petition, the panel wrongly rejected the plaintiffs' excessive-fee claim "largely on

the proposition that the fees charged by other mutual-fund advisers were similar."

Pet. at 8.  That misreads the Supreme Court's opinion, misconstrues the remand

panel's decision, and ignores the factual record.

The Supreme Court did not foreclose comparison between fees charged by

advisers to similar funds when considering whether a challenged fee is "beyond the

range of arm's-length bargaining."  *Jones*, 559 U.S. at 350 n.8.  To the contrary, it

reminded courts that the ICA "requires consideration of all relevant factors" in

making that inquiry.  *Id.* at 349.  And the Court explicitly observed that under the

*Gartenberg* standard it was adopting, "a comparison of the [challenged] fees with

those paid by similar funds" was a useful analytical "factor."  *Id.* at 344 n.5 (citing

*Gartenberg,* 694 F.2d at 929–32).  To be sure, the Court counseled that "courts

should not rely *too* heavily on comparisons with fees charged to mutual funds by

other advisers."  *Id.* at 336 (emphasis added).  But that comment hardly renders a

comparison of fees charged to similar funds irrelevant.  The Court's

recommendation against *over*-emphasis of that factor only signaled caution to be sure that such a contrast effects an apt apples-to-apples evaluation.[1]

It follows that the remand panel did not "contradict" the Supreme Court's holding by referring to fees charged by other advisers to comparable mutual funds. More importantly, the remand panel did not – as the plaintiffs' Petition insinuates – hold such a comparison to be dispositive or the exclusive source of its conclusion that Harris' fees were not proved to be "beyond the range of arm's length bargaining." Rather, the panel explicitly relied on the *multiple* findings of undisputed material facts by the District Court, *including* fees "charged by advisers for other comparable funds." Remand Order at 2. The panel also referred to other findings of undisputed fact that the District Court made in its assessment of "all relevant factors" which the panel determined "*collectively* require a decision for Harris." *Id.* (emphasis added). The factors that the remand panel and the District Court considered embraced at least the following:

- <u>Board Approval</u>. The District Court found that "Harris provided information to the trustees about each Fund and its operation, and the trustees then

---

[1]     Ironically, the plaintiffs begin this argument with reference to the panel's initial decision in 2008, pointing to its skepticism about the *Gartenberg* standard, and its discussion of fund industry competition. The plaintiffs highlight in particular the contrary views expressed by the five judges dissenting from the denial of rehearing of that decision. Pet. at 7–8. But that earlier exchange of perspectives is now beside the point. In *Jones*, the Supreme Court defined the governing standard, and addressed the proper role of mutual fund fee comparisons in applying that test. And in doing so, the *Jones* Court expressly declined to weigh in on the debate about competition the plaintiffs now suggest should be reopened. *See Jones*, 559 U.S. at 353 ("The debate between the Seventh Circuit panel and the dissent from the denial of rehearing regarding today's mutual fund market is a matter for Congress, not the courts."). That is precisely why the remand panel steered clear of the issue when applying the *Jones* standard.

approved the fee schedule." *Jones*, 2007 WL 627640 at *8. "[W]e have no reason to discount the notion that the shareholders' interests were represented at the negotiating table by a group of people who were capable of giving those interests primacy." *Id.* "The evidence the parties have provided indicate[s] that the board as a whole was operating without any conflict that would prevent it from engaging in arm's-length negotiations with Harris." *Id.* Likewise, in considering the record evidence, the remand panel found that "Harris provided accurate information to the funds' boards, whose disinterested members approved the fees." Remand Order at 2.[2]

- <u>Fee Schedule Breakpoints</u>.   The District Court found that Harris' fee schedule "included breakpoints that applied to all or some of the fees incurred during the damages period, and those breakpoints in part resulted from the negotiation efforts of the trustees." *Jones*, 2007 WL 627640 at *8–9 (describing Harris' breakpoints in detail and holding that the plaintiffs established no disputed issue of fact about whether they were beyond what could result from arm's-length negotiations).   Similarly, the remand panel found that "the fee schedules reduced the applicable percentage charge as funds' assets rose (for example, Harris's fee for one fund was 1% of assets up to $2 billion but 0.75% of assets over $5 billion)." Remand Order at 2.[3]

---

[2]     *See also* R.A. 69–72 ¶¶ 14–18 (providing evidence of the board's frequent meetings (both with and without Harris), consultation with independent outside counsel, and board consideration of voluminous informational materials (both from Harris and from a third-party consultant)).

[3]     *See also* R.A. 67–70 ¶¶ 10–12, 14.

- Strong Investment Performance.  In considering the Funds' investment performance, the District Court found that "the funds performed well, relatively speaking, during the damages period" and that the board had met several times before approving the fees to review and consider this performance information.  *Jones*, 2007 WL 627640 at *1, 8 (noting that the plaintiffs do not dispute Harris' performance figures).  With the same record evidence available to it, the panel determined that "the fees could not be called disproportionate in relation to the value of Harris's work, as the funds' returns (net of fees) exceeded the norm for comparable investment vehicles."  Remand Order at 2–3 ("[T]he undisputed evidence shows that Harris delivered value for the money; the funds it was advising did as well as, if not better than, comparable funds.").[4]

Importantly, the remand panel observed that the plaintiffs "do not raise any factual question about any of these points."  Remand Order at 2.  And the plaintiffs do not even attempt to raise a factual question now.  Rather, they seize upon the panel's statement that "[t]his record shows that Harris's fee was comparable to that produced by bargaining at other mutual-fund complexes, *which tells us the*

---

[4]     In fact, the funds in question rather dramatically outperformed their peers.  In the years in which the plaintiffs challenged the fees, the performance of the Funds was stellar, and particularly so in relation to the fees Harris charged.  In the three years ended March 31, 2004, the Oakmark Global Fund generated an average annual return of 22.36% (net of fees), which was the single best performance of any of the 254 funds in its peer group, whose average annual return in that period was 2.31%.  *See* R.A. 74 ¶ 27.  The Oakmark Equity and Income Fund generated an average annual return in that period of 12.49% (net of fees), the third best performance in its peer group of 445 funds, which had annual average returns of 3.76%.  *See* R.A. 73 ¶ 25.  And the Oakmark Fund generated average annual returns of 6.22% (net of fees), ranking it twelfth of 307 peer funds, which had an average annual return in those years of 1.43%.  *See* R.A. 73 ¶ 26.

*bargaining range*," Remand Order at 3; Pet. at 8–9 (emphasis added), to contend that the panel held as a matter of law that a fee comparable to charges incurred by other funds does not violate Section 36(b). But that just wrests the highlighted phrase from its context. The remand panel specifically invoked multiple factors, the entire summary judgment record, and the District Court's analysis – which included its own assessment of the "range" within which fees charged by Harris could appropriately fall[5] – to conclude that the plaintiffs had not raised a material issue of fact tending to suggest that fees charged by Harris were "beyond the range of arm's-length bargaining."

At bottom, then, the plaintiffs disagree with how the remand panel applied the Supreme Court's ruling to the undisputed factual record. Rhetoric aside, they do not fairly contend that the panel "contradicted" the *Jones* opinion. Disagreement with how a panel evaluates a factual record – indeed, a record on which the plaintiffs still do not raise a material dispute – is not a suitable issue for *en banc* reconsideration. *See Easley*, 532 F.3d at 594.

## II.    The Panel Did Not "Categorically Dismiss" Evidence of Fees Charged to Institutional Clients in Conflict with *Jones*

The plaintiffs next assert that the panel's Remand Order conflicts with *Jones* because of its supposed "categorical dismissal" of evidence about a disparity between fees Harris charged to mutual fund and institutional clients. Pet. at 9–11. The plaintiffs again misconstrue the panel's ruling and the record evidence.

---

[5]    *See Jones*, 2007 WL 627640 at *8.

7

Far from "categorically dismissing" a comparison of mutual fund and institutional account fees, the remand panel followed *Jones* by explicitly *quoting* the Supreme Court's directive that there should *not* be "'any categorical rule regarding the comparisons of fees charged different types of clients.'"  Remand Order at 3 (quoting *Jones,* 559 U.S. at 349–50).  The remand panel observed that its initial opinion rejected the plaintiffs' argument that such a comparison should be dispositive, because different clients call for different services (whether of time commitments, asset turnover, liquidity or other factors),[6] and noted that the Supreme Court did not disturb that conclusion.  Remand Order at 3.  Indeed, the Supreme Court did not just leave the panel's decision on that point intact, it specifically *pointed* to it as the basis for its rejection of a "categorical rule" and its related holding that the ICA does not "ensure fee parity between mutual funds and institutional clients contrary to petitioners' contentions."   *Jones,* 559 U.S. at 350. In Justice Alito's words:

> As the panel below noted, there may be significant differences between the services provided by an investment adviser to a mutual fund and those it provides to a pension fund which are attributable to the greater frequency of shareholder redemptions in a mutual fund, the higher turnover of mutual fund assets, the more burdensome regulatory and legal obligations, and higher marketing costs.  If the services rendered are sufficiently different that a comparison is not probative, then courts must reject such a comparison.

*Id.* at 349–50 (citation and internal quotations omitted).

The remand panel then considered the record evidence the parties adduced on the different fees charged to mutual funds and institutional clients, and noted

---

[6]     *See Jones v. Harris Assocs. L.P.*, 527 F.3d 627, 634–35 (7th Cir. 2008).

that the plaintiffs "have not proffered evidence that would tend to show that Harris provided [institutional clients] with the same sort of services that it provided to the Oakmark funds, or that it incurred the same costs when serving different types of clients." Remand Order at 3–4. That was not a "categorical dismissal" of the plaintiffs' renewed contention that the "fee parity" is required. It was a reasoned application of the Supreme Court's directives *not* to apply a "categorical rule," to "give such comparisons the weight they merit in light of the similarities and differences between the services," and to be "wary of inapt comparisons." *Jones*, 559 U.S. at 350.

Indeed, the Supreme Court went even further. The Court specifically observed that a comparison between institutional and mutual fund charges is not ordinarily a triable issue. Rather, when such a comparison is attempted, the Supreme Court directed courts to first assess any disparity in fees by taking into account the different markets for advisory services among different types of clients: "*Only* where plaintiffs have shown a large disparity in fees that *cannot* be explained by the different services *in addition to other evidence* that the fee is outside the arm's-length range will trial be appropriate." *Id.* at 350 n.8 (emphases added).

Here, as the remand panel recognized, the record does not support either a large disparity in fees, a conclusion that services and costs between types of clients were congruent, or supply the required "other evidence" that the fee was beyond what could have been fairly bargained. To the contrary, the record is replete with evidence that the services Harris provided to institutional clients differed

dramatically – both in nature and in scope – from the services it provided to mutual funds.[7]

Perhaps most important, the plaintiffs ignore the District Court's analysis on the point. For although Harris urged wariness because the disparate services provided to each type of client rendered a contrast inapt, Judge Kocoras refused to "disregard this comparison." *Jones*, 2007 WL 627640 at *8. Rather, after weighing the different fees charged to mutual fund and institutional clients, and "[*e*]*ven assuming . . . the services . . . were indistinguishable*" between the clients, the court concluded the fees charged to the mutual funds still fell within the arm's-length bargaining range. *Id.* In short, the District Court considered the actual evidence and found it wanting, but still could not conclude the mutual fund fees were excessive even after giving the plaintiffs the benefit of the doubt.

That disposes of the Petition's renewed contention. Comparison to *non*-mutual fund fees is not dispositive as a matter of law, the remand panel did not "categorically dismiss" the plaintiffs' claim, and the plaintiffs' continued disagreement with how the District Court and the panel viewed the evidence does

---

[7]     *See* R.A. 72–73 ¶¶ 19–24. The Petition's meek assertion that the plaintiffs adduced evidence that services were "virtually identical" is both false and incomplete. The plaintiffs' "evidence" was the *ipse dixit* assertion that services were "virtually identical" because advisory contracts for institutional and mutual fund clients used similar language to describe the fundamental investment advisory function. *See, e.g.,* R.A. 147–48 ¶ 19–20. But the plaintiffs ignore the different manner in which the different types of clients' funds are managed (*e.g.,* amounts, size, turnover, liquidity requirements, etc.), as well as the additional services Harris provides to its mutual fund clients (*e.g.,* regulatory, legal, compliance, etc.), and they ignore that the agreements do not specify what additional services are – or are not – included within the investment and reinvestment of client assets. *See* R.A. 211, ¶ 19. Thus, beyond the plaintiffs' *ipse dixit* contention, all of the evidence demonstrates that Harris provided dramatically more and different services to mutual funds than to its institutional accounts.

not present an "exceptional" question appropriate for *en banc* review. *See Easley*, 532 F.3d at 594.

## III. The Panel Did Not "Ignore" the Supreme Court's Instructions Regarding Board Process in Considering the Plaintiffs' Evidence of Supposed "Structural Defects"

In a conclusory one-paragraph argument, the plaintiffs assert that "[b]oth the panel and the district court treated plaintiffs' evidence of structural flaws in the fee-setting process as irrelevant to their claim about excessive fees," which they claim "conflicts" with the Supreme Court's directive to "take into account both procedure and substance." Pet. at 12 (quoting *Jones,* 559 U.S. at 351). But the assertion of indifference to process is false and the plaintiffs' reliance on a truncated quote from the Supreme Court is off the mark.

The District Court considered the plaintiffs' "process" arguments at length, both on the plaintiffs' own motion for summary judgment on "process" grounds, and again on their opposition to Harris' cross motion. *Jones*, 2007 WL 627640 at *4–6, 8. The District Court directly addressed the plaintiffs' theories that the board chair was insufficiently "disinterested" under the ICA, that certain board members' business and social relationships rendered them incapable of rendering independent judgments, and that the board was not adequately informed of the chair's prior compensation and relationships. *Id.* at *4–6. The District Court concluded that this evidence did not provide a basis for summary judgment in the plaintiffs' favor, and that with respect to Harris' motion the evidence did not undermine the trustees' independence for purposes of approving the fees:

11

> Consequently, we have no reason to discount the notion that the shareholders' interests were represented at the negotiating table by a group of people who were capable of giving those interests primacy. . . . The evidence the parties have provided indicate[s] that the board as a whole was operating without any conflict that would prevent it from engaging in arm's-length negotiations with Harris.

*Id.* at *8.

In no way, then, did the District Court "ignore" the plaintiffs' evidence of supposed board conflicts and lack of independence. It considered the plaintiffs' evidence and found it wanting – both as a stand-alone basis for liability, and in its consideration of "all relevant factors" – to pose a triable question on whether Harris' fees were "beyond the range of arm's-length bargaining." *Jones,* 551 U.S. at 350 n.8. Indeed, even though the District Court did not have the benefit of the Supreme Court's decision in *Jones*, its analysis of the plaintiffs' "process" evidence is entirely consistent with the guidance later set forth by the Court.

The remand panel, for its part, did not "ignore" the plaintiffs' "process" claims either. It specifically observed that it disposed of them on the plaintiffs' initial appeal, the plaintiffs did not seek *certiorari* on that issue, and the Supreme Court did not disturb the initial panel's conclusion. Remand Order at 2. Accordingly, the "only question" remanded from the Supreme Court was whether the fee charged by Harris was "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Id.*

Unable to fairly claim that either the District Court or the remand panel "ignored" their "process" claims, the plaintiffs' Petition now appears instead to

resurrect the old contention that ostensible flaws in the fee approval process can stand as an independent basis for Section 36(b) liability, irrespective of the size of the adviser's fee. The remand panel did not "ignore" that issue either. It specifically noted that "after *Jones*, a process-based failure alone does not constitute an independent violation of § 36(b). Instead, we have been instructed that § 36(b) 'is sharply focused on the question of whether the fees themselves were excessive.'" Remand Order at 2 (citing *Gallus v. Ameriprise Fin., Inc.*, 675 F.3d 1173, 1179 (8th Cir. 2012)) (quoting *Jones*, 559 U.S. at 352).

But even if the renewed argument presented a live issue,[8] it does not survive scrutiny under the explicit holding of *Jones*. The plaintiffs' contention that Section 36(b) authorizes an independent claim for "flaws" in the negotiating process reads more into the Supreme Court's comment that analysis of *fees* should "take into account both procedure and substance" than is there.

The context for the Supreme Court's mention of "procedure" is critical. The Court instructed lower courts that "[w]here a board's process for negotiating and reviewing investment-adviser compensation is robust, a reviewing court should afford commensurate deference to the *outcome* of the bargaining process." *Jones*, 559 U.S. at 351 (emphasis added). In contrast, "where the board's process was deficient or the adviser withheld important information, the court must take a more rigorous look at the *outcome*." *Id.* (emphasis added). The plaintiffs' reference to the

---

[8]     The claim has been waived. It was raised in the District Court and lost; repeated on the plaintiffs' initial appeal and lost; was not raised in the plaintiffs' earlier petition for rehearing *en banc*; was not raised in their petition for *certiorari*; and was not addressed in the Supreme Court's remand order. *See Vidimos, Inc. v. Wysong Laser Co., Inc.*, 179 F.3d 1063, 1065–66 (7th Cir. 1999).

13

directive to "take into account both substance and procedure" studiously avoids the Supreme Court's focus on the "outcome" of that procedure. But in the very same paragraph of its opinion, the Supreme Court emphasized that "Section 36(b) is sharply focused on the question of whether the *fees themselves* were excessive." *Id.* at 352 (internal quotation marks omitted) (emphasis added). In other words, "outcomes" is what Section 36(b) is all about. The Court then explained that the robustness of the process of disclosure and negotiation was simply a "factor that must be considered" in "calibrating the degree of deference" due a decision to approve fees. *Id.* In context, the Supreme Court's observation that "procedure" should be "take[n] into account" unambiguously was focused exclusively on how "procedures" impact "outcomes" – that is, "the fees themselves." *Id.* at 350 n.8.

That "sharp focus" on "the fees themselves" – based in part upon a calibration of the amount of respect to accord the board's "procedure" – simply cannot escalate a "process" question into an independent basis for liability. The remand panel's opinion accordingly did not "conflict" with the Supreme Court's decision in the slightest.

## CONCLUSION

The Supreme Court's judgment remanding the case to this Court required the panel to apply the standard it announced – whether the fee charged was "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining" – to the factual record developed in the District Court on summary judgment. *Jones*, 559 U.S. at 353. That is what the remand panel did. It faithfully adhered to the

14

Supreme Court's ruling and reasoning, and applied the new test to the multiple material facts the District Court found to be undisputed.

The plaintiffs' assertion of "exceptional importance" is based upon "the importance of § 36(b) and the leading role of this case in its interpretation." Pet. at 2. While the Supreme Court's decision was certainly significant in its own right by establishing the Section 36(b) standard of liability, the issue on remand is dramatically narrower in scope and precedential import. The Remand Order does not purport to establish new legal principles, to interpret the Supreme Court's opinion beyond what it said, or to focus upon facts different from those the District Court found.

The plaintiffs' quarrel with the remand panel's decision focuses only on their disagreement with the panel's findings on the factual record. But the "function of *en banc* hearings is not to review alleged errors for the benefit of losing litigants." *HM Holdings, Inc. v. Rankin*, 72 F.3d 562, 563 (7th Cir. 1995) (citing *United States v. Rosciano*, 499 F.2d 173, 174 (7th Cir.1974); *accord Western Pac. R.R. Corp. v. Western Pac. R.R. Co.*, 345 U.S. 247, 256–259 (1953)); *see also Roberts v. Sears, Roebuck & Co.*, 723 F.2d 1324, 1348 (7th Cir. 1983) (noting that *en banc* hearings are granted rarely because doing so "imposes a heavy burden on an already overburdened court"). Since the Petition does not meet the requirements of Rule 35, the Petition should be denied.

Respectfully submitted,

HARRIS ASSOCIATES L.P.


BY: /s/ John D. Donovan, Jr.
     John D. Donovan, Jr.
     Robert A. Skinner
     Douglas H. Hallward-Driemeier
     Amy D. Roy
     ROPES & GRAY, LLP
     Prudential Tower
     800 Boylston Street
     Boston, Massachusetts 02199
     Telephone:  (617) 951-7000
     Facsimile:  (617) 951-7050


Dated:  September 11, 2015

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing Answer to Petition for Rehearing *En Banc* complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it is fifteen pages or less, excluding the parts of the petition exempted by FED. R. APP. P. 32(a)(7)(b)(iii).

The undersigned further certifies that this petition complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this answer has been prepared in proportionally spaced typeface using Microsoft Word in 12 point Century.


/s/ Robert A. Skinner
Robert A. Skinner

17

## CERTIFICATE OF SERVICE

I, Robert A. Skinner, an attorney of record, certify that I caused true and correct copies of Defendant-Appellee Harris Associates L.P.'s Answer to Petition for Rehearing *En Banc* to be served by the appellate CM/ECF system on:

Counsel of record:

Michael J. Brickman
James C. Bradley
Nina Fields Britt
Richardson, Patrick, Westbrook &
  Brickman, LLC
1017 Chuck Dawley Boulevard
Mount Pleasant, SC 29464

John M. Greabe
296 Gage Hill Road
Hopkinton, NH  03229

Ernest A. Young
127 Turvey Court
Chapel Hill, NC 27514

Kevin M. Flynn
Kevin M. Flynn & Associates
77 West Wacker Drive
Suite 4800
Chicago, IL  60601


/s/ Robert A. Skinner
Robert A. Skinner


Dated:  September 11, 2015